UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Polaris Industries, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Allen Mangum and MTN. TOP Products, LLC, <br><br> Defendants. | Case No.: 0.23-cv-00614-SRN-LIB <br><br><br> **ORDER ON DEFENDANTS' MOTION TO DISMISS** |

Brett C. Govett (pro hac vice), Felicia J. Boyd, Jaime Wing, Nathanial Mannebach, and Sara Scully (pro hac vice), Norton Rose Fulbright US LLP, 60 South Sixth Street, Ste 3100, Minneapolis, MN 55402, for Plaintiff

Andrew J Pieper, Bojan Manojlovic, and Brea LeeAnn Khwaja, Stoel Rives LLP, 33 South Sixth Street, Suite 4200, Minneapolis, MN 55402, for all Defendants

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Motion to Dismiss [Doc. No. 53] filed by Defendants Allen Mangum ("Mangum") and MTN. TOP Products, LLC ("MTN. TOP") (collectively, "Defendants"), concerning four of the seven causes of action in Plaintiff Polaris Industries, Inc. ("Polaris")'s First Amended Complaint ("FAC") [Doc. No. 47]. Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court **DENIES** Defendants' Motion to Dismiss.

## I.      BACKGROUND

Polaris alleges violations of the Defend Trade Secrets Act ("DTSA") (18 U.S.C. § 1831), the Minnesota Uniform Trade Secrets Act ("MUTSA") (Minn. Stat. § 325C, *et seq*.),

and claims for conversion, unjust enrichment, and unfair competition against all Defendants, and against Mangum alone for breach of contract and civil theft. (*See* FAC, ¶¶ 101-165.) Defendants seek dismissal of the claims for conversion, civil theft, unjust enrichment, and unfair competition.

### A.    Factual Background

Polaris is a manufacturer of recreational vehicles, including "snow bike conversion kits," which convert a dirt bike-style motorcycle into a dirt bike fitted for use on snow. (FAC ¶¶ 11-12.) On April 21, 2015, Polaris purchased all shares of (and thereby acquired) Timbersled Products, Inc. ("Timbersled Products") from Defendant Mangum and his wife, Natalya Mangum. (*Id*. at ¶ 17.) During the course of the parties' subsequent commercial relationship, Mangum participated in the development of Polaris' intellectual property related to the design and production of snow bike conversion kits, which Timbersled Products had designed and produced prior to Polaris' purchase of the firm. (*Id*. at ¶¶ 15-16, 60.)

As part of Polaris' purchase of Timbersled Products from Mangum and his wife, the parties signed four agreements: 1) a Stock Purchase Agreement ("SPA"); 2) an Assignment of Intellectual Property Interests; 3) an Employment Agreement between Mangum and Polaris; and 4) a related Employee Proprietary Information and Conflict of Interest Agreement. (FAC ¶¶ 18-36; FAC Exs. 1-4.) In sum, these agreements required Mangum to transfer Timbersled Products' intellectual property to Polaris and prohibited Mangum and his wife from using any trade secrets or confidential information previously controlled

by Timbersled Products at the time of purchase, or subsequently developed by Mangum for Polaris' use. (*Id.*)

Mangum voluntarily resigned his employment at Polaris on May 1, 2017. (FAC ¶ 38.) Mangum thereafter signed a letter agreement reiterating his post-employment confidentiality and non-disclosure obligations under the SPA and Employment Agreement, and also signed a separate Independent Contractor Agreement ("ICA") with Polaris to retain his services. (*Id.* at ¶¶ 39-40; FAC Exs. 5 and 6.)

The ICA requires Mangum to "adhere to all non-disclosure obligations and to not use or disclose to any third party any such Confidential Information[1] or trade secret information" except as authorized, an obligation that lasts five years. (FAC ¶¶ 44-45; FAC Ex. 6, § 7(B).) The ICA also requires that Mangum affirmatively disclose "Inventions" and "Works" conceived of during the term of the agreement (and for one year after) to Polaris, assigns all "know-how and trade secret information" conceived of or originated by Mangum arising from his work to Polaris, and requires that Mangum return all of Polaris' property (broadly construed) upon termination of the agreement. (FAC ¶¶ 46-49; FAC Ex. 6, §§ 8-9.)

---

[1]     The ICA defines "Confidential Information" broadly to include "[a]ll information disclosed to or learned by Contractor, or to which Contractor has access or which is generated by Contractor on behalf of the Company during the term of this Agreement, which Contractor has a reasonable basis to believe is Confidential Information, or which is treated by the Company as Confidential Information," with a laundry list of possible types of confidential information spanning beyond trade secrets. (FAC ¶ 43; FAC Ex. 6, § 7.A.)

On April 30, 2020, Polaris terminated the ICA.  (FAC ¶ 55.)  Subsequently, Mangum allegedly returned only a single box of materials to Polaris, which did not contain all of the company property that Mangum was required to return pursuant to the ICA, such as his work notebooks.  (*Id.* at ¶¶ 56-57.)  On May 23, 2021, approximately one month after the end of the non-compete provision in the ICA, Mangum announced the launch of MTN. TOP, a new snow bike conversion kit business, including a new product, the XFR129.  (*Id.* at ¶¶ 71-74.)

**B.    Procedural History**

On March 13, 2023, Polaris filed suit in this Court against Mangum, his wife Natalya Mangum, and MTN. TOP.  Polaris filed the FAC on June 1, 2023, removing Natalya Mangum as a defendant and alleging violations of DTSA, MUTSA, and claims for conversion, unjust enrichment, and unfair competition against all Defendants, as well as claims for breach of contract and civil theft against Allen Mangum.  (*See* FAC, ¶¶ 101-165.)   In the FAC, Polaris alleges that Defendants have appropriated "Trade Secrets" and/or "Confidential Information and Know-How" relating to the design, engineering, and manufacturing of Polaris' snow bike conversion kits, including at least six design features.[2]  (*See id.*)

---

[2]     These features identified by Polaris, collectively the "Polaris Proprietary Snow Bike Features," are: "Jackshaft/jack hub design, featuring inboard chain mounting and bump out tunnel; Universal bike mount; Track design; Universal spindle mount; Ski and skag/runner design and New RIOT rear suspension."  (FAC ¶ 62.)

Defendants filed this Motion to Dismiss on June 15, 2023, seeking to dismiss the causes of action for conversion, civil theft, unjust enrichment, and unfair competition. Polaris filed a memorandum in opposition to the motion on July 10, 2023, and Defendants their reply on July 20.  Oral argument was held on the motion on August 3, 2023.

## II.   DISCUSSION

### A.   Legal Standard

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court accepts the facts alleged in the complaint as true, and views those allegations in the light most favorable to the plaintiff.  *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013).  However, the Court need not accept as true wholly conclusory allegations or legal conclusions couched as factual allegations.  *Id.*  To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level."  *Id.* at 555.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

### B.   Analysis

In their motion to dismiss, Defendants make two main arguments.  First, they argue that Polaris' challenged causes of action— conversion, civil theft, unjust enrichment, and unfair competition—are displaced by MUTSA, which replaces other civil remedies for misappropriation of a trade secret.  Defendants argue that Polaris makes no factual

differentiation between allegedly misappropriated trade secrets and "Confidential Information and Know-How" subject to the challenged claims, and that such differentiation is a necessary element of maintaining both MUTSA and other tort claims in the same action. Second, Defendants argue that Polaris "double-dips" by claiming both breach of contract and injuries in tort for the same conduct, the foundations of which are duties established by contracts between Mangum and Polaris. Per the "independent duty rule," Defendants argue that this makes the challenged causes of action duplicative.

In response, Polaris argues first that its challenged causes of action are not displaced, as they all apply to "Polaris' Company Property," a broader set of property than that meeting the definition of a trade secret. Polaris also argues that it properly pleaded each of the causes of action in the alternative, in case the Court later determines that the allegedly misappropriated information does not rise to the level of a trade secret but still constitutes protectable confidential information. Second, Polaris argues that as Mangum has an independent common-law duty of confidentiality and MTN. TOP has no contractual relationship with Polaris at all, the independent duty rule is not applicable, and the causes of action are not duplicative.

### 1.    Displacement Of Claims Under MUTSA

MUTSA states that it "displace[s] conflicting tort, restitutionary, and other law of [Minnesota] providing civil remedies for misappropriation of a trade secret." Minn. Stat. § 325C.07(a); *see also SL Montevideo Tech., Inc. v. Eaton Aerospace, LLC*, 292 F. Supp. 2d 1173, 1179 (D. Minn. 2003). The existence of a trade secret depends on three factors: (1) the information must not be generally known or readily ascertainable; (2) the

information must derive independent economic value from secrecy; and (3) the party asserting the misappropriation must have made reasonable efforts to maintain secrecy of the item. *Nordale, Inc. v. Samsco, Inc.*, 830 F.Supp. 1263, 1273 (D. Minn. 1993). If these factors are not present, there is no trade secret. *Id*.

As such, MUTSA does not affect contractual or civil remedies that are not based upon misappropriation of a trade secret. Minn.Stat. § 25C.07(b). Therefore, a plaintiff may "maintain separate causes of action 'to the extent that the causes of action have 'more' to their factual allegations than the mere misuse or misappropriation of trade secrets.'" *SL Montevideo Technology, Inc.*, 292 F. Supp. 2d at 1179 (quoting *Micro Display Sys., Inc. v. Axtel, Inc.*, 699 F. Supp. 202, 205 (D. Minn. 1988)). The parties dispute (a) whether Polaris alleged "more" than misappropriation of trade secrets; and (b) whether Polaris adequately pleaded in the alternative.

### a.       Factual Allegations Which Are "More" Than Mere Misuse or Misappropriation of Trade Secrets

Defendants argue that Polaris has not alleged "more" than the misappropriation of trade secrets, but rather plays a "shell game" by defining "Trade Secrets" as separate from "Confidential Information and Know-How" without drawing any factual distinctions between the two categories or naming property that fits into one category but not the other. (Def.'s Mem. [Doc. No. 56] at 8–14.)   Polaris argues that it has alleged Defendants have misused or are in wrongful possession of "Polaris' Company Property," a term defined under contract and by the FAC to include property that does not constitute a trade secret. As such, Polaris argues that the FAC adequately pleads the misappropriation of protectable

information beyond trade secrets, sufficient to allow the challenged causes of action to continue. (Pl.'s Mem. [Doc. No. 63] at 7-8.)

Polaris is correct that the FAC defines "Polaris' Company Property" more broadly than information that constitutes trade secrets.[3]  (FAC ¶ 49.)  For example, Polaris alleges that Mangum did not return notebooks used "to record his work conducted under the Employment Agreement and under the Independent Contractor Agreement," and that these notebooks contain "both Polaris' Confidential Information and Know-How and Trade Secrets." (*Id*. at ¶¶ 49, 56).  However, the notebooks are still Polaris' Company Property in and of themselves.

Defendants claim that defining Polaris' Company Property to include Trade Secrets and describing it "in tandem" with Confidential Information and Know-How somehow excludes property that is not a trade secret from the definition.  (Def.'s Reply Mem. [Doc. No. 66] at 4-5.)  The Court disagrees: Polaris provides only that the examples which follow its definition are included, not that everything else is excluded.

Additionally, Polaris alleges in the FAC that MTN. TOP has listed "customers and suppliers identical to those listed in the SPA disclosure schedules as confidential information despite the agreement by Defendant Allen Mangum, and his wife…to treat and

---

[3]     The FAC defines "Polaris Company Property" as "all materials, documents and other items which Defendant was required to return, including property which reflected or comprised Polaris' Trade Secrets, or, alternatively, Confidential Information and Know-How."  (FAC ¶ 56.)  This is substantively the same as the definition of company property under the ICA ("[A]ll papers and records of every kind, and any and all copies thereof, and motorcycles, snow bike kits and associated parts used by Contractor in performing the Services or otherwise[.]")  (FAC Ex. 6, § 9.)

hold all such information as confidential and not to use that information." (*Id*. at ¶ 73.) This is information that Polaris alleges is confidential but does not constitute a trade secret, and as such supports the challenged causes of action.

While Defendants concentrate on the overlap between Trade Secrets and Confidential Information and Know-How—exemplified by the FAC's focus on the Polaris Proprietary Snow Bike Features—Polaris still points to at least two specific types of property that do not constitute trade secrets but which Defendants are allegedly misusing or in wrongful possession thereof. Regardless of whether Polaris must specify confidential information that is not a trade secret, Polaris has done so. *See Schwan's Co. v. Rongxuan Cai*, Civil No. 20-2157 (JRT/HB), 2021 WL 5745791 at *9 (D. Minn. Dec. 2, 2021) (holding that MUTSA did not displace claims where the plaintiff alleged non-trade secret "recipes and methods" were misappropriated).

Whether or not the allegedly unreturned property may be found to contain trade secrets, confidential information that is not a trade secret, both, or neither, this determination is not properly an issue for the Court prior to discovery and the parties' examination of these materials. As such, Polaris' claims are not displaced.

> ### b.    Pleading "Confidential Information and Know-How" In The Alternative

Defendants do not dispute that Polaris may plead in the alternative, but rather whether it has adequately done so. Defendants argue that Polaris did not specify which of its claims are pleaded in the alternative by failing to use sufficiently clear language (such as "alternative" or "alternatively") and reiterates its argument that Polaris failed to

sufficiently delineate between Trade Secrets and Confidential Information and Know-How.  (Def.'s Reply Mem. at 7-10.)  Polaris argues that it has adequately pleaded in the alternative by stating that the challenged causes of action apply to Polaris' Confidential Information and Know-How only to the extent that the fact-finder determines they are not trade secrets, and concedes that should the fact-finder determine at a later date that a given item is a trade secret, MUTSA would then properly displace the challenged causes of action as to that item.  (Pl.'s Mem. at 9-15.)

Taken as a whole, Polaris' intent to plead misappropriation of trade secrets or in the alternative a breach of contract and torts relating to a violation of confidentiality is clear. At multiple points throughout the FAC, Polaris argues that the Polaris Proprietary Snow Bike Features are either Trade Secrets or alternatively Confidential Information and Know-How. *See* FAC ¶¶ 56, 68-69, 82, 86, 90, 92-95.  This is clearest at paragraphs 68-69, where Polaris argues that the Polaris Proprietary Snow Bike Features meet the statutory requirements of a trade secret, or:

> Alternatively, Polaris Proprietary Snow Bike Features are Confidential Information and Know-How under the broad definitions of such information in the SPA, Employment Agreement, Proprietary Information Agreement, Letter Agreement and Independent Contractor Agreement because contractors (such as Allen Mangum) had a reasonable basis to believe such information was Confidential Information and Know-How, and it was treated by Polaris as Confidential Information and Know-How.

Moreover, none of the four challenged counts claim injury for the misappropriation of only trade secrets.  Counts IV and VII—for conversion and unfair competition, respectively—expressly state that they concern Polaris' Confidential Information and Know-How, which "includes information that does not meet the definition of a trade secret

but does meet the definition of Confidential Information and Know-How under any of the agreements between the parties." (FAC ¶¶ 149, 163.) Count V does not refer to trade secrets at all, but only to Polaris' Company Property (FAC ¶ 155), while Count VI only refers to Confidential Information and Know-How (FAC ¶ 158) with no reference to trade secrets. All counts incorporate the preceding allegations.

Defendants cite no case law requiring a plaintiff to use specific language to plead in the alternative. The single case cited by Defendants for this proposition, *Knotts v. Nissan N. Am., Inc.*, states only that the plaintiff "clearly asserts his claim for unjust enrichment in the alternative" in part by including "Unjust Enrichment—Pled in the Alternative" in the heading for the relevant cause of action. 346 F. Supp. 3d 1310, 1323 (D. Minn 2018). Nowhere does *Knotts* hold that such language or formatting is required.

Rather, on review of the case law cited by both parties, there are no distinct requirements for pleading these causes of action in the alternative. Across the cases cited, courts find that the plaintiff fails to plead in the alternative where their claims are made as "one unit" or otherwise not pleaded in the alternative at all. *See*, *e.g.*, *Protégé Biomedical, LLC v. Z-Medica, LLC*, 394 F. Supp. 3d 924, 940-41 (D. Minn. 2019) (always listing "Confidential, Proprietary, and Trade Secret Information" together, including in the causes of action for common-law torts). Conversely, Polaris states in multiple places that it is pleading in the alternative and makes no claim to an injury solely from the misappropriation of trade secrets in Counts IV-VII.

While Defendants argue that *ImageTrend, Inc. v. Locality Media, Inc.*, No. 22- cv-0254 (WMW/DTS), 2022 WL 17128009 (D. Minn. Nov. 22, 2022) demonstrates an

additional requirement, "separat[ing] and specify[ing] what [Plaintiffs] contend is trade secret information and [what is not]" (Def.'s Reply Mem. at 9), this is a misreading of the case. In *ImageTrend, Inc.*, the Court dismissed the plaintiff's MUTSA and DTSA claims, and thus refused to dismiss the alternative claims. 2022 WL 17128009 at *5. While the Court there considered it helpful that the plaintiff's factual allegations were "broader than the alleged misappropriation of trade secrets," the Court's ruling does not state that this is a requirement. Moreover, even if this were a requirement, as discussed *supra*, Polaris has detailed at least two ways—unreturned physical property and the use of confidential customer and supplier information—in which Polaris' Company Property and Confidential Information and Know-How are broader concepts than Trade Secrets.

Finally, at this stage of the litigation, it is not necessary to require a high level of specificity in distinguishing between these claims, even if ultimately it could be determined that all of Polaris' claims are trade secret claims. *See TE Connectivity Networks, Inc. v. All Sys. Broadband, Inc.*, No. 13-1356 ADM/FLN, 2013 WL 6827348, at *5 (D. Minn. Dec. 26, 2013) (holding, on a motion to dismiss, that "even if it ultimately is determined that all of [plaintiff's] claims are trade secret claims, at this stage of the proceedings, [plaintiff] need not plead with the specificity [defendant] demands.")

Defendants' contention that Polaris has not sufficiently pleaded in the alternative is unsupported by case law and the language of the FAC. As such, Polaris' claims are not displaced.

### 2.      Applicability Of The Independent Duty Rule

Minnesota law does not recognize an independent tort for conduct that merely constitutes a breach of contract.  Where a tort claim is based in the same conduct underlying the counterparty's breach of the contract, the tort claim is duplicative and cannot stand. *See UFE, Inc. v. Methode Elecs., Inc.*, 808 F. Supp 1407, 1410 (D. Minn. 1992) (citing *Wild v. Rarig*, 234 N.W.2d 775, 790 (Minn. 1975)).  This rule, the "independent duty rule," only allows for tort damages where the breach of contract "constitutes or is accompanied by an independent tort."  *Berger v. Nationstar Mortg. LLC*, 118 F. Supp. 3d 1121, 1125 (D. Minn. 2015) (internal citations omitted).

Polaris argues that the independent duty rule does not apply to its claims because 1) the FAC alleges that Mangum has an independent common-law duty of confidentiality distinct from his contractual duties, which supports a tort claim separate from Mangum's alleged breach of contract; and 2) MTN. TOP has no contractual relationship with Polaris at all, and as such the independent duty rule is entirely inapplicable to it.

Defendants argue that each of Polaris' challenged causes of action is premised on the breach of confidentiality obligations contained in one of the contractual agreements between Mangum and Polaris, and thus is appropriately a claim for breach of contract rather than a tort.  Defendants also argue that the lack of a contractual relationship between MTN. TOP and Polaris does not preclude enforcement of the independent duty rule, as MTN. TOP's liability is entirely derivative of Mangum's liability.

13

### a.      Common-Law Duty Of Confidentiality

The parties agree that the independent duty rule does not necessarily preclude the assertion of both breach-of-contract and tort claims where an independent duty has been alleged.  Defendants argue that whether or not Polaris could assert that they violated an independent common-law duty of confidentiality, it did not actually allege such a violation in the FAC.  (Def.'s Reply Mem. at 10-11.)  Rather, Defendants argue, Polaris only alleged that Defendants violated contractual duties related to confidential information.  (*Id*.)  In the absence of an allegation of a violation of a common-law duty, the independent duty rule precludes the challenged causes of action.

Defendants are correct that Polaris did not expressly allege a common-law duty of confidentiality based on Mangum's employment and/or independent contractor relationship with Polaris in the FAC.  However, Polaris alleges that Mangum violated various duties of confidentiality arising under his contracts with Polaris, including an employment contract.  Under Minnesota state law, employment contracts necessarily also include a general common-law duty of loyalty.  *See Cenveo Corp. v. Southern Graphic Systems, Inc.*, 784 F.Supp.2d 1130, 1136 (D. Minn. 2011).  The common-law duty of confidentiality for an employee is derivative of the broader duty of loyalty owed by employees to their employers.  *See, e.g., Hearing Associates, Inc. v. Downs*, A16–1317, 2017 WL 2414852, at *8-9 (Mn. Ct. App., June 5, 2017) (holding that "[t]here is evidence…that appellants breached their duty of loyalty by using Hearing Associates' confidential information to compete with Hearing Associates.").  Moreover, Polaris does

not allege a breach of contract against MTN. TOP, which differentiates its claims as to

Mangum and MTN. TOP.

Defendants cite no case law requiring Polaris to distinctly plead a common-law duty

of confidentiality in order to avoid dismissal under the independent duty rule.  While the

FAC is not a model of clarity on this point, the FAC is not so unclear that Defendants lack

notice of what Polaris alleges, and dismissal on these grounds would be against the interests

of judicial economy.  As such, the FAC sufficiently pleads to a common-law duty of

confidentiality.

### b.      Lack Of A Contract Between MTN. TOP and Polaris

This Court has broadly held that the independent duty rule "provides limitations on

when a party may assert tort claims against another with whom the party has a contractual

relationship."  *See U.S. Bank Nat. Ass'n v. PHL Variable Ins. Co.*, Civil No. 12–877

(JRT/TNL), 2013 WL 2936099 at *10 (D. Minn. June 14, 2013); *see also CH Robinson*

*Worldwide, Inc. v. Alexandria Int'l, Inc.*, No. 22-469 (JRT/TNL), 2022 WL 4017506, at *5

(D. Minn. Sept. 2, 2022).

Defendants argue that as Polaris' allegations against MTN. TOP depend on the

defined terms in the web of contracts between Mangum and Polaris, the claims against

MTN. TOP are derivative of the claims against Mangum, and thus covered by the

independent duty rule.  (Def.'s Reply Mem. at 12.)[4]  Polaris argues that the independent

---

[4]      Defendants also argue—for the first time in their reply memorandum—that Polaris
failed to adequately differentiate between MTN. TOP and Mangum in the FAC, denying

duty rule does not apply, as it did not allege a contractual relationship between MTN. TOP

and Polaris, nor any breach of contract, but rather distinct non-contractual claims.  (Pl.'s

Mem. at 18.)   As the independent duty rule only applies where there is a contractual

relationship between the parties, it is inapplicable here.  (*Id*.)

Defendants' arguments are unavailing.  While Defendants cite *First Integrity Bank,*

*N.A. v. Ohio Cas. Ins. Co.*, No. 05-2761 (MJD/RLE), 2006 WL 1371674 (D. Minn. May

15, 2006) and *Wild v. Rarig*, 234 N.W.2d at 790, neither case holds that where a third

party's alleged wrongful acts are factually rooted in a contractual relationship between two

other parties, the independent duty rule precludes claims against the third party.

---

Defendants notice as to what claims are being made against which defendant(s) and thus
failing to state a claim.  (Def.'s Reply Mem. at 13.)

As an initial matter, the Court is not bound to consider Defendants' argument that Polaris
did not adequately differentiate its claims between the parties. *See Redking Foods LLC v.*
*Minn Assocs.*, No. 13–CV–0002 (PJS/JSM), 2014 WL 754686 at *4 (D. Minn. Feb. 26,
2014) ("[F]ederal courts do not, as a rule, entertain arguments made by a party for the first
time in a reply brief.") (internal citations omitted).

However, this argument is also unavailing on the merits.  Polaris alleges conversion and
unjust enrichment against both defendants based on the sale of products derived from the
retention of Polaris' property.  (FAC ¶¶ 151-52, 158.)  Moreover, Polaris describes how
allegedly confidential information was possessed by MTN. TOP and used by Defendants
for their own benefit.  *See, e.g.,* FAC ¶¶ 73, 94.  While Polaris does not expressly allege
so, it is readily inferred that MTN. TOP produces snow bike conversion kits under the
XFR129 brand based on information misappropriated by Mangum.  This is a distinct
allegation of a wrongful act and in part the subject of Counts IV, VI and VII.  Any lack of
clarity certainly does not rise to the level of a failure to "provide fair notice of the ground
for claims made against a particular defendant." *Tatone v. SunTrust Mortg., Inc.*, 857 F.
Supp. 2d 821, 831 (D. Minn. 2012).

Defendants cite no other cases making this argument, and it does not appear to be supported in case law.

Moreover, the logic of the independent duty rule—preventing "double-dipping" by parties who have defined their duties to each other through contract—does not apply to third parties who are not themselves bound by that contract. Applying the independent duty rule to tort claims against such parties could leave plaintiffs with no source of relief against them for their wrongful actions.  As such, MTN. TOP's lack of a contractual relationship with Polaris means the independent duty rule does not preclude Polaris from asserting tort claims against it.

## III.    CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [Doc. No. 53] is **DENIED** as to Polaris' Fourth, Fifth, Sixth, and Seventh Causes of Action.


Dated: September 7, 2023                              s/  *Susan Richard Nelson*
                                                     SUSAN RICHARD NELSON
                                                     United States District Judge